UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY HAROLD LOHMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:25 CV 986 RWS |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Greogory Harold Lohman brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's decision denying his application for disability benefits under the Social Security Disability Insurance Program (SSDI), Title II of the Social Security Act, 42 U.S.C. §§ 401-434. For the reasons set forth below, I will affirm the decision of the Commissioner.

**Procedural History**

Plaintiff Gregory Harold Lohman was born on July 25, 1958. (Tr. 161) [1] He is currently 68 years old. Lohman completed a high school degree. (Tr. 211) In the past several years before he applied for disability benefits Lohman worked as a

---

[1] Citations to the transcript (Tr.) use the page numbers assigned to the documents by the Commissioner.

truck driver delivering construction material. (Tr. 217, 226) Lohman had employment earnings of $38,054.59 in 2020 and $15,297.97 in 2021. (Tr. 186) Lohman has not engaged in substantial gainful employment since July 1, 2021, the alleged onset date of his disability. (Tr. 19)

Lohman protectively filed a Title II application for a period of disability and disability insurance benefits on August 22, 2022. (Tr. 17, 161) He alleged that his disability began on July 1, 2021. (Tr. 17, 161) Lohman's application was initially denied on November 8, 2022. (Tr. 61) His application was denied again upon reconsideration on January 5, 2023. (Tr. 68) On February 27, 2023, Lohman filed a request for a hearing before an Administrative Law Judge (ALJ). (Tr. 87) The ALJ held a hearing on June 18, 2024. (Tr. 32-60)

In his Function Report, completed on August 7, 2023, Lohman asserted that he was unable to work because he cannot climb in or out of work trucks, climbing stairs is painful, and carrying heavy weight is painful. (Tr. 225) The report stated that Lohman's knees become painful if he walks ½ mile or more. (Tr. 239) His Disability Report, completed on August 22, 2022, lists the following medical conditions that limit his ability to work: broken kneecap and high blood pressure. (Tr. 210) Lohman states in his report that he stopped working on June 1, 2021 because he retired, and he became unable to work on July 1, 2021. (Tr. 210) Lohman takes the following medications: hydrochlorothiazide (a diuretic used to

treat high blood pressure and reduce fluid buildup); metoprolol (spelled as "methopropolol" a beta-blocker used to lower high blood pressure); and veniafaxine (used to treat a generalized anxiety disorder). (Tr. 212). At the hearing before the ALJ, Lohman's counsel stated that Lohman fractured his kneecap in July 2021 after he had bilateral knee replacements in October of 2020 (left knee) and in April of 2021 (right knee). (Tr. 39, 51) Lohman has ongoing issues with prolonged standing and walking, difficulty with stairs, and walking on uneven ground. Lohman's counsel opined that Lohman is limited to a light level of exertion and that he would "grid" if found limited to the "light level." (Id.)

Lohman testified that he received his right knee replacement 12 weeks prior to his retirement. He was on short-term disability during that time period and decided to retire on June 1, 2021. He felt that the pain in his replacement knees would prevent him from "carrying drywall, or going upstairs, or do the other physical activities that the job demanded." So he chose to retire. (Tr. 43) He asserts that his knee replacements prevent him from kneeling.

Lohman testified that he is able to drive. (Tr. 40) After standing about 15 minutes (as in a long line) he sometimes needs to sit for a couple of minutes before standing again. He can walk through a grocery store. (Tr. 44) He can carry at least a gallon of milk but it is painful to go up steps with weight in his hands. (Tr. 45) When he walks ½ mile or more his knees can become swollen. He can sit for

45 minutes or so but when he stands the first couple of steps are painful. (Tr. 46) He can cut his lawn but rests when his knees hurt. He did not state any other limitations. The pain in his knees does not affect his ability to concentrate or focus. (Tr. 49) When his knees hurt he will elevate his legs and may take ibuprofen. He does not take ibuprofen daily, only when he needs to. (Id.) Lohman broke his right kneecap in July 2021. He was going downstairs when his knee gave out. (Tr. 51-52) He had surgery to repair the kneecap but the surgery was not as successful as hoped and he still has some pain issues with his kneecap. (Tr. 52) He is seeking disability because of his knees. (Tr. 47)[2]

On July 9, 2024, the ALJ issued a decision finding that Lohman was not disabled and that he could perform medium skilled work. The ALJ found that Lohman could perform jobs that exist in significant numbers in the national economy. (Tr. 27) On April 29, 2025, the Appeals Council denied Lohman's request for review. (Tr. 1) The ALJ's decision is now the final decision of the Commissioner. 42 U.S.C. §§ 405(g).

In this action for judicial review, Lohman contends that the ALJ failed to properly evaluate medical opinion evidence, failed to properly evaluate Lohman's subjective pain complaints, and asserts that the RFC is not supported by substantial

[2] Lohman testified that he had anxiety in the past but that has "been cured" and he is doing "real well with that." (Tr. 48)

evidence. Lohman requests that I reverse the Commissioner's final decision and remand this matter for further evaluation. For the reasons that follow, I will deny Lohman's request to remand this matter for further proceedings.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt Lohman's statement of material facts (ECF # 14-1) which have all been admitted by the Commissioner. (ECF # 19-1). Additional facts will be discussed as needed to address the parties' arguments.

**Discussion**

A. Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, a plaintiff must prove that he is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity (SGA).[3] If not, the disability analysis proceeds to the second step. In this step the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then he is not disabled and the analysis ends. If the claimant has a severe impairment the Commissioner then proceeds to the third step and determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, he is conclusively disabled. If the impairment is not equivalent to a listed impairment,

[3] "Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. 'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). 'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience." (Tr. 12.)

then the Commissioner proceeds to the fourth step to determine whether the claimant can perform his past relevant work.[4] If so, the claimant is not disabled. If not, at the last step the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). "[Substantial evidence] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (cleaned up). Determining whether there is substantial evidence requires scrutinizing analysis. Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to

[4] "The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965)." (Tr. 13.)

draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

When evaluating medical opinions and prior administrative medical findings, the ALJ will consider various factors, the "most important factors" being supportability and consistency. 20 CFR § 404.1520c(a). The ALJ must "articulate in his determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in your case record." Id. at § 404.1520c(b).

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such

> matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322.[5] When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

B. ALJ's Decision

In his written decision, the ALJ found that Lohman had not engaged in substantial gainful activity since July 1, 2021, the alleged onset of his disability. (Tr. 19) The ALJ found that Lohman had the following severe impairments: a fractured kneecap; obesity; and "status post bilateral knee replacement." (Id.) The ALJ found that Lohman has no limitation in understanding, remembering, or applying information. He has no limitation in interacting with others. He has no limitations in concentrating, persisting, or maintaining pace and no limitations in

---

[5] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." See SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

adapting or managing oneself. (Tr. 21-22) The ALJ determined that Lohman's impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22) The ALJ found Lohman to have the residual functional capacity (RFC) to perform medium work with the following limitations:

> [Lohman] can occasionally climb ladders, ropes and scaffolds. The individual can frequently climb ramps and stairs. The individual can frequently stoop, crouch, kneel and crawl. No exposure to extreme heat, cold, humidity and vibrations. The individual can have no exposure to unshielded moving mechanical parts. No exposure to unprotected heights.

(Tr. 22). The ALJ determined that Lohman is capable of performing past relevant work as a heavy truck driver. (Tr. 25) The ALJ consulted a vocational expert (VE) to assess whether other jobs within Lohman's RFC existed in significant numbers in the national economy. (Tr. 26-27) The VE identified the jobs of a kitchen helper (400,000 positions); hand packager (100,000 positions); and store laborer (350,000 positions) which could be performed based on Lohman's RFC. (Tr. 27) The ALJ therefore determined that Lohman was not disabled within the meaning of the Social Security Act. (Id.)

C. Lohman's Objection to the ALJ's Decision

Lohman challenges the ALJ's analysis of Lohman's limitations caused by his knee replacements and his broken kneecap.[6] In his decision the ALJ recognized the limitations Lohman claimed regarding his knees. The ALJ found that Lohman's knee impairments could reasonably be expected to cause his alleged symptoms. However, the ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 23) The ALJ cited to Lohman's medical records noting that by December 2021, Lohman reported that he was performing the full activities he would like to do such as walking. (Tr. 24) The ALJ noted that in a June 2022, at a follow-up examination at the Advanced Bone and Joint facility, "the claimant reported that he was doing relatively well. He complained of some ongoing weakness when trying to ascend and descend the stairs, along with left knee pain. An examination noted he was not tender to palpation. He had very near full range of motion in both knees, to 120 degrees. He had 5/5 quad strength, bilaterally." (Tr. 24, 280) The exam report also noted that when Lohman uses stairs he had "laterally based pain on the left knee and no significant pain on the right." (Tr. 280) The ALJ also cited

[6] Lohman also asserted that the ALJ improperly evaluated the State Agency mental health provider reports. However, Lohman testified that he does not have any mental health limitations (and none have been noted) and that he is only asserting disability based on his knee issues.

to a December 2023, follow-up exam by Advance Bone and Joint which reflected similar results to the 2022 examination noting that Lohman was doing reasonably well, he was "quite high functioning," he had no pain on the right knee, and Lohman noted that he had some soreness on the left knee and expressed "some frustration" with using stairs. (Tr. 24, 624) The ALJ found this medical evidence was inconsistent with Lohman's statements of the severity of pain and his limitations concerning his knees. (Tr. 24) The ALJ also reviewed the reports of State Agency medical consultants Steven Fishburn, M.D. (dated November 2, 2022) and Donna McCall D. O. (dated January 4, 2023). (Tr. 25, 65-67, 72-75) Both Dr. Fishburn and Dr. McCall opined that Lohman could occasionally lift or carry 50 pounds, he could frequently lift or carry 25 pounds, and he could stand, walk, or sit about 6 hours in an 8-hour workday. (Tr. 65, 72-73) The ALJ found these opinions partially persuasive in light of the evidence in the record of Lohman's bilateral knee replacements. (Tr. 25) The ALJ accepted the lifting and carrying limits suggested by the doctors but incorporated in the RFC some "modest postural and environmental limitations." (Id.)

Lohman asserts that the ALJ did not sufficiently evaluate Dr. Fishburn's and Dr. McCall's report. However, the ALJ did explain how he considered the supportability of these doctors' reports in that he found them partially persuasive. He compared the consistency of their reports to the follow-up examinations at the

Advanced Bone and Joint facility in June 2022 and December 2023. A reviewing court should not "reweigh the evidence in the record regarding the supportability and consistency factors, rather than uphold the ALJ's finding that the medical opinions are not persuasive unless that finding falls outside the available zone of choice." Cropper v. Dudek, 136 F.4th 809, 814 (8th Cir. 2025) (internal quotation and citation omitted). An ALJ is "free to accept some, but not all, of a medical opinion." Austin v. Kijakazi, 52 F.4th 723, 729 (8th Cir. 2022). An ALJ "is not required to 'explicitly ... reconcile every conflicting shred' of medical evidence." Id. (cleaned up). "Whether the ALJ should have provided additional limitations amounts to a disagreement over the weighing of evidence within the record," and it is not the Court's role to reweigh that evidence. (Id. at 731)

The ALJ's analysis of the medical record was inside the "zone of choice" and was supported by substantial evidence.

Lohman also asserts that the ALJ failed to properly evaluate Lohman's subjective pain complaints. Lohman asserts that the ALJ failed to consider all the Polaski factors and only addressed one factor (duration, frequency, and intensity of pain). [ECF # 14 at 9] The United States Court of Appeals for the Eighth Circuit has repeatedly rejected the proposition that an ALJ must address each Polaski factor when evaluating a claimant's subjective complaints. See Samons v. Astrue,

497 F.3d 813, 820 (8th Cir. 2007); Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2025), and Eichelberger v. Barnhart, 390 F. 3d 584, 590 (8th Cir. 2004).

The ALJ's decision reviewed the medical evidence including Lohman's positive response to treatment, his activities, and Lohman's statements to medical sources about his pain. An ALJ's inferences regarding a claimant's subjective complaints need only to be reasonable. Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008) ("Our case law permits the ALJ's reasonable inferences.") Lohman's disagreement with the ALJ's inferences regarding Lohman's pain is not a ground for error on the ALJ's part.

Finally, Lohman argues that the RFC is not supported by substantial evidence. Lohman asserts that the ALJ improperly relied on opinions of Dr. Fishburn and Dr. McCall and the ALJ's "own medical judgment" and interpreting "raw medical data" in determining Lohman's RFC. The ALJ based the RFC on his consideration of Lohman's testimony, Lohman's submitted reports of his activities, his improvement with treatment, on objective medical findings, and on the ALJ's consideration of the medical opinions and the opinions of Dr.s Fishburn and McCall. (Tr. 22-25). As a result, the RFC was based on substantial evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED that** the final decision of the Commissioner of Social Security is affirmed.

A separate Judgment is entered herewith.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2026.